855 So.2d 1064 (2003)
JOHNSON MOBILE HOMES OF ALABAMA, INC., and Johnson Homes of Meridian, Inc.
v.
Michael HATHCOCK and Patsy Hathcock.
1992310.
Supreme Court of Alabama.
February 21, 2003.
*1065 Harry M. Renfroe, Jr., Tuscaloosa, for appellants.
Robert D. Selwyn of Wilson & Selwyn, L.L.C., Tuscaloosa, for appellees.
SEE, Justice.
Johnson Mobile Homes of Alabama, Inc., and Johnson Homes of Meridian, Inc. (hereinafter collectively referred to as "JMH"), defendants in an action pending in the Tuscaloosa Circuit Court, appeal from that court's order denying their motion to compel arbitration. JMH argues that the legality of the contract underlying its arbitration agreement with Michael Hathcock is an issue for an arbitrator, rather than the trial court, to decide. JMH also argues that Michael Hathcock's wife Patsy should be compelled to arbitrate her claims, even though she did not sign an arbitration agreement.
On July 23, 1997, Michael Hathcock purchased a mobile home from JMH. In connection with this purchase, Michael Hathcock signed a contract for the sale of the mobile home ("the sale contract"), a freestanding arbitration agreement, and an "Installment Note, Security Agreement, and Disclosure Statement." The freestanding arbitration agreement provided, in part, as follows:
"The seller and buyer(s) agree that this transaction involves interstate commerce. The seller and the buyer(s) also agree that in the event of any controversy, dispute, and/or difference of opinion arising out of or related in any manner to their contract, or arising out of or related in any manner to any negotiations *1066 and/or representations made in connection with the sale of the mobile home or the execution of the contract, then such controversy and/or dispute shall be resolved through binding arbitration, in accordance with the rules of the American Arbitration Association.
"The buyer(s) agree that the scope of the disputes, controversies, and/or differences of opinion to which this arbitration agreement applies shall include, but not be limited to, the following: [t]he terms of the contract; its breadth and scope; all documents concerning any goods and/or services acquired by the buyer(s); the condition of the mobile home; the conformity of the mobile home sold to the contract; the representations, promises, undertakings, and/or covenants made by the seller and/or any of its agents, servants, and/or employees in connection with the sale of the mobile home and/or otherwise dealing with the mobile home; the terms of financing of the transaction; any terms and/or provisions of any credit life and/or disability insurance purchased at or about the time of the transaction; and any terms, coverages, and/or provisions of any property insurance and/or other types of insurance purchased at or about the time of the transaction."
The "Installment Note, Security Agreement, and Disclosure Statement" contained the following arbitration provision:
"27. Arbitration Agreement and Jury Trial Waiver. Any controversy or claim arising out of or in any way related to this Note, or any default hereunder, or the purchase, sale, delivery, set-up, quality, or financing of the Manufactured Home or any related furniture, appliance, or other property, product or service, whether based on contract, an alleged tort, or other legal theory, shall be resolved by binding arbitration administered by the American Arbitration Association (`AAA') under its Commercial Financial Disputes Arbitration Rules.... Any question whether a particular controversy or claim is subject to arbitration shall be decided by the Arbitrator."
The Hathcocks lived in the mobile home until October 27, 1997, when a fire destroyed the home and the Hathcocks' personal possessions inside the home. The Hathcocks recovered $84,784.12 from their insurance company to compensate them for their loss.
On July 30, 1999, the Hathcocks sued JMH, alleging (1) that JMH had represented to them that the mobile home they had purchased was new, when, in fact, it was not and (2) that an improperly installed and/or manufactured electrical box caused the fire in their home.[1] On September 3, 1999, JMH moved to dismiss, or, alternatively, to compel arbitration. The trial court issued an order denying the motion on August 3, 2000, finding "that the underlying [sale] contract was void ab initio in that it violated the Alabama Deceptive Trade Practices Act." In addition, it found that Patsy Hathcock was not a signatory to the contract and, therefore, was not subject to the arbitration agreement signed by Michael Hathcock.
JMH filed a timely notice of appeal with this Court on September 12, 2000. On October 17, 2000, Johnson Homes of Meridian, Inc. ("Johnson-Meridian"), filed a petition in bankruptcy in the United States *1067 Bankruptcy Court for the Southern District of Mississippi. On May 21, 2001, this Court stayed the appeal pending the resolution of Johnson-Meridian's bankruptcy proceedings. On December 21, 2001, the bankruptcy judge granted the Hathcocks relief from the automatic stay to permit them to proceed in their action against JMH. On August 5, 2002, the Hathcocks filed in this Court a copy of the order granting them relief, and we returned the case to our active docket. On September 19, 2002, we ordered the parties to re-brief the issues raised on appeal in light of the significant amount of time that had passed since the parties' original submission.

I.
Review of a trial court's denial of a motion to compel arbitration is properly sought through a direct appeal. Rule 4(d), Ala. R.App. P.; A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990). On appeal, JMH argues that, as part of his purchase of a mobile home, Michael Hathcock signed a valid arbitration agreement, and, therefore, that both Michael and Patsy Hathcock must arbitrate their claims against it. JMH also argues that any question regarding the legality of the sale contract is a question for an arbitrator, not the trial court, to decide.

II.
The Hathcocks attack the validity of the sale contract because, they allege, JMH misrepresented in that contract that their mobile home was new. Therefore, they argue, the trial court properly denied JMH's motion to compel arbitration because, they argue, the sale contract, that is, the contract underlying the arbitration agreement, is void under the State's consumer-protection laws.
The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"), as interpreted by the federal courts, governs arbitration agreements in transactions that affect interstate commerce. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Under the FAA, "if the claim is of fraud in the inducement of the arbitration clause itselfan issue which goes to the `making' of the agreement to arbitrate" the court may decide it. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The FAA, however, "does not permit the ... court to consider claims of fraud in the inducement of the contract generally." 388 U.S. at 404, 87 S.Ct. 1801.
"Fraud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action."
Oakwood Mobile Homes, Inc. v. Barger, 773 So.2d 454, 459 (Ala.2000). In essence, then, the Hathcocks argue that JMH fraudulently induced Michael Hathcock into entering into the sale contract. Nothing in the record suggests, and the Hathcocks do not argue, that the arbitration agreement itselfas distinguished from the sale contractwas induced by fraud. Moreover, nothing in the record indicates that Michael Hathcock did not willingly assent to be bound by the sale contract, the freestanding arbitration agreement, or the "Installment Note, Security Agreement, and Disclosure Statement." Accordingly, there is no fraud claim that goes to the "making" of the arbitration agreement itself, and, thus, no fraud claim that must be tried in the court.
"`[A]ny claims as to fraud in the inducement of the contract generally ... are subject to arbitration.'" Quality *1068 Truck & Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1168 (Ala.1999) (quoting Ex parte Lorance, 669 So.2d 890, 892 (Ala. 1995)). Under Prima Paint, whether JMH's misrepresentations violate Alabama's Deceptive Trade Practices Act or some other Alabama law is an issue for an arbitrator to decide.[2] The parties' arbitration agreement specifically states that Michael Hathcock agreed to arbitrate disputes concerning "the condition of the mobile home; the conformity of the mobile home sold to the contract; [and] the representations, promises, undertakings, and/or covenants made by the seller." Accordingly, the trial court erred in denying JMH's motion to compel arbitration on the basis that the sale contract violated Alabama's Deceptive Trade Practices Act.

III.
Patsy Hathcock argues that she is not bound by the arbitration agreement (1) because she did not sign it, and (2) because her claims are not based on the sale contract entered into by her husband Michael. The duty to arbitrate is a contractual obligation, and generally a court cannot compel a party to arbitrate any claims he or she has not agreed to submit to arbitration. See AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Nonetheless, a party cannot claim the benefits of a contract without accepting its burdens. Michie v. Bradshaw, 227 Ala. 302, 308, 149 So. 809, 814 (1933).
The complaint in this case does not differentiate between Patsy's claims and Michael's claims. Rather, the complaint refers to Patsy Hathcock and Michael Hathcock collectively as "the plaintiffs." Patsy argues, however, that her claims are "distinct from the claims advanced in the complaint stemming from the contract itself." (The Hathcocks' Brief at 15.) Accordingly, to the extent that her claims are not based on the underlying sale contract, the trial court did not err in finding that Patsy Hathcock is not required to arbitrate her claims, if she has any.[3]

IV.
We conclude that the trial court, in its August 3, 2000, order, erred in denying JMH's motion to compel Michael Hathcock to arbitrate his claims. We conclude that the trial court properly denied JMH's motion to compel Patsy Hathcock to arbitrate her claims insofar as they do not relate to the underlying sale contract. Accordingly, we reverse the trial court's order in part, affirm the order in part, and remand this cause to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., and JOHNSTONE, J., concur in part and dissent in part.
MOORE, Chief Justice (concurring in part and dissenting in part).
I concur in Part III of the main opinion, in which this Court affirms the trial court's finding that Patsy Hathcock is not required to arbitrate her claims insofar as they do not relate to the underlying sale contract. I dissent from the remainder of the opinion, which reverses the trial court's denial of the motion to compel arbitration *1069 filed by Johnson Mobile Homes of Alabama, Inc. See my dissent in Selma Medical Center v. Fontenot, 824 So.2d 668, 676-93 (Ala.2001).
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur insofar as the main opinion affirms the trial court in its denial of the motion of the defendants "JMH" to compel Mrs. Hathcock to arbitrate her claims. I further concur that Mrs. Hathcock cannot enforce any contract between Mr. Hathcock and JMH. I respectfully dissent, however, insofar as the main opinion reverses the trial court in its denial of the motion of JMH to compel Mr. Hathcock to arbitrate his claims.
The record contains substantial evidence that JMH misrepresented used goods as new in order to induce Mr. Hathcock to sign the documents. Section 8-19-5(6), Ala.Code 1975, part of the Alabama Deceptive Trade Practices Act, legislation adopted to exercise the police powers of this state, expressly proscribes misrepresenting used goods as new. A purported contract obtained by a violation of such a law is void. Woods & Co. v. Armstrong, 54 Ala. 150, 152 (1875) ("`It has been repeatedly determined that a penalty inflicted by statute upon an offense, implies a prohibition, and a contract relating to it is void, even where it is not expressly declared by the statute that the contract shall be void.'"); Western Union Telegraph Co. v. Young, 138 Ala. 240, 243, 36 So. 374, 375 (1903) ("[A]ll contracts which are made in violation of a penal statute are as absolutely void as if the law had in so many words declared that they should be so.... It is not necessary that a statute should impose a penalty for doing or omitting to do something in order to make a contract void which is opposed to its operation. It is sufficient if the law prohibits the doing of the act, and when it does, the court, being organized under the law, and required to administer it, cannot enforce any supposed rights predicated upon a prohibited act or omission to perform an act that is prohibited.") (citations and internal quotation marks omitted); Gill Printing Co. v. Goodman, 224 Ala. 97, 102, 139 So. 250, 254 (1932) ("[C]ontracts specially prohibited by law, or the enforcement of which violated a law, or the making of which violated the law which was enacted for regulation and protection, as distinguished from a law created solely for revenue purposes, [are] void and nonenforceable.") (citations and internal quotation marks omitted); Marx v. Lining, 231 Ala. 445, 448, 165 So. 207, 209-10 (1935) ("It is established by a long line of decisions of this court that contracts specifically prohibited by law, or the enforcement of which violates the law, or the making of which violates the laws which were enacted for regulation and protection, as distinguished from a law created solely for revenue purposes, are void and unenforceable."). See also Bankers & Shippers Ins. Co. v. Blackwell, 255 Ala. 360, 365, 51 So.2d 498 (1951). As a defense applicable to contracts in general, this void-contract caselaw is not preempted by the Federal Arbitration Act. 9 U.S.C. § 2.
"[A] party cannot be forced to arbitrate if the contract containing the arbitration clause, which gives the arbitration clause viability, is found to be void." Alabama Catalog Sales v. Harris, 794 So.2d 312, 316 (Ala.2000) (citation and internal quotation marks omitted). The court, rather than an arbitrator, decides the issue of whether an arbitration clause is void for violation of a statute. Id. at 317.
Therefore, the trial court did not err in holding the contracts containing the arbitration provisions void ab initio and in denying the motion of JMH to compel Mr. *1070 Hathcock to arbitrate his claims. Of course, if we were to affirm these rulings by the trial court and were to allow Mr. Hathcock to proceed to litigate his claims in court, he could not there pursue his claims for breach of warranty and for bad faith based on the contract held void ab initio by the trial court.
NOTES
[1] The Hathcocks asserted claims of (1) fraud under Alabama's Deceptive Trade Practices Act, § 8-19-1 et seq., Ala.Code 1975; (2) breach of express warranty and bad faith; (3) liability under Alabama's Extended Manufacturer's Liability Doctrine; (4) negligence, recklessness, and wantonness; (5) a violation of the Alabama Mini-Code, § 5-19-1 et seq., Ala.Code 1975; and (6) the tort of outrage.
[2] The parties do not contest on appeal that the transaction affects interstate commerce so as to be governed by the FAA.
[3] We express no opinion as to which of Patsy's claims, if any, are not related to the contract, or the merits of those claims.