[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 794 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 795 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 796 
Bill Heard Chevrolet, Inc., and Chuck Berry petition this Court for a writ of mandamus directing the trial court to vacate its order allowing discovery and to enter an order compelling arbitration. We grant the petition and issue the writ.
 I.
On May 6, 2004, Angela Dunlap negotiated with Bill Heard Chevrolet, Inc. ("Bill Heard"), to purchase a used Dodge Durango sport-utility vehicle. Dunlap arranged to pay for the Durango by trading in her Isuzu Rodeo sport-utility vehicle, the loan secured by which she had not paid off, and financing the balance. After filling out credit applications, Dunlap signed a "Retail Purchase Contract," a "Bailment/Conditional Delivery Agreement," and an arbitration agreement. Dunlap then left her Isuzu Rodeo with Bill Heard and took possession of the Durango.
Two weeks after she had left the dealership in the Durango, Bill Heard informed Dunlap that the trade-in value of her Rodeo and the price of the Durango needed to be adjusted so that she could qualify for financing. Dunlap returned to Bill Heard to sign a new series of documents, including a second "Retail Purchase Contract," a second "Bailment/Conditional Delivery Agreement," and a second arbitration agreement.
First Service Finance, Inc., which had financed Dunlap's purchase of the Isuzu Rodeo, later repossessed Dunlap's Rodeo from Bill Heard because of a lapse in payments on Dunlap's loan secured by the Rodeo. Immediately after the Rodeo was repossessed, Bill Heard took the Durango back from Dunlap and told her that she did not qualify for financing.
Dunlap sued Bill Heard and its employee, Chuck Berry, alleging legal fraud, deceit, and conversion, as well as fraudulent, reckless, and negligent misrepresentation. Dunlap also alleged that Bill Heard and Berry had violated various provisions of the Truth-in-Lending Act and the Equal-Credit-Opportunity Act. In addition to seeking relief for herself, Dunlap asked the trial court to certify her lawsuit as a class action.
Bill Heard and Berry moved the trial court to stay the action and to compel *Page 797 
Dunlap to submit her claims to arbitration. Citing the two arbitration agreements Dunlap signed, Bill Heard and Berry asserted the existence of a contract that calls for arbitration and that involves an interstate commercial transaction. In support of their motion, Bill Heard and Berry attached an affidavit from Edward D. Allen, the custodian of business records for Bill Heard. Allen's affidavit states that Dunlap signed arbitration agreements in which she agreed to arbitrate any dispute between her, Bill Heard, and any of Bill Heard's employees. Allen's affidavit also attests that Chuck Berry was an employee of Bill Heard at the time of the transaction between Dunlap and Bill Heard.
Allen's affidavit also states that the Durango had been registered as a lease vehicle in Oak Park, Michigan, until it was sold to a car dealer at an auction in Knoxville, Tennessee. Allen states that Bill Heard purchased the Durango from the car dealer in Tennessee and brought it to Alabama for the purpose of selling it. Allen attached 21 documents to his affidavit, including the two Retail Purchase Contracts, the two Bailment/Conditional Delivery Agreements, and the two arbitration agreements signed by Dunlap.
Dunlap responded by filing a brief in opposition to the motion to compel arbitration, which opposed Bill Heard and Berry's motion on three grounds. First, Dunlap asserted that the contractual documents relating to the sale of the Durango were unenforceable because, she argued, the condition precedent in the contracts — financing — never occurred. Dunlap argued that the arbitration agreements were components of the Retail Purchase Contracts and were, therefore, also unenforceable. Second, Dunlap argued that "the entire transaction" was fraudulent and, as a result, the arbitration agreements are void. Third, Dunlap argued that the arbitration agreements do not cover her dispute because, she says, her claims are based on Bill Heard's failure to pay off the loan on the Isuzu Rodeo that she had traded in on the Durango, not on the purchase of the Durango.
Dunlap asked the trial court to set a hearing on her request for class certification and to "permit the parties a reasonable period of time in which to submit evidence obtained through discovery pertinent to the determining factors." Dunlap did not attach affidavits or any other supporting evidence to her brief to the trial court.
After hearing arguments and considering the briefs and accompanying evidentiary submissions, the trial court issued the following order on December 21, 2004:
 "The Court is of the opinion that the Motion to Compel Arbitration is due to be STAYED pending limited discovery solely on the issue of whether the case should be compelled to arbitration. The Parties will have 120 days to conduct such discovery, after which the Court will reconvene to consider the Motion to Compel Arbitration."
 II.
Bill Heard and Berry ask this Court to vacate the trial court's order allowing discovery and to direct the trial court to enter an order compelling Dunlap to arbitrate her claims.[1] Bill Heard and Berry argue that they are entitled to an order compelling Dunlap to arbitrate her claims because, they say, she failed to introduce any evidence rebutting their prima *Page 798 
facie showing of the existence of a contract involving an interstate commercial transaction and calling for arbitration. Bill Heard and Berry also argue that the trial court exceeded its discretion by ordering a 120-day stay on the motion to compel arbitration because Dunlap never supplied evidence to support her claim that discovery on the issue of arbitration is necessary.
 III.
A petition for a writ of mandamus is an appropriate means of challenging a trial court's order continuing a motion to compel arbitration to allow discovery. Ex parte Walker Reg'l Med. Ctr.,Inc., 825 So.2d 741, 744 (Ala. 2001). However, a writ of mandamus is an extraordinary remedy. Ex parte Empire Fire Marine Ins. Co., 720 So.2d 893, 894 (Ala. 1998). Therefore, mandamus will not issue unless Bill Heard and Berry show: (1) a clear legal right to the relief sought; (2) an imperative duty upon the trial court to perform, accompanied by its refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of this Court. See Empire Fire MarineIns. Co., 720 So.2d at 894. Also, because Bill Heard and Berry seek to vacate a trial court's discovery order, this Court will not issue the writ of mandamus unless it determines that "the trial court clearly exceeded its discretion." Ex parte OcwenFed. Bank, FSB, 872 So.2d 810, 813 (Ala. 2003).
Ex parte Greenstreet, Inc., 806 So.2d 1203 (Ala. 2001), established the standard that applies when a party responds to a motion to compel arbitration by asking the trial court to delay ruling on the motion so that discovery can be conducted on the enforceability of the arbitration agreement:
 "[I]f the party opposing a properly supported motion to compel arbitration desires discovery, that party must present a factually based predicate before a right to conduct discovery regarding matters that could invalidate the agreement to arbitrate arises. At a minimum, a party opposing a properly supported motion to compel arbitration and seeking discovery on issues that could invalidate the arbitration agreement must provide an affidavit describing the circumstances that are within its knowledge and that are relevant to its claimed defenses to arbitration."
806 So.2d at 1209.
Thus, our inquiry into whether Bill Heard and Berry are entitled to the writ of mandamus consists of two components. This Court must first determine whether Bill Heard and Berry have "satisfied [their] burden of production by making a prima facie showing that an agreement to arbitrate exists in a contract relating to a transaction substantially affecting interstate commerce." Greenstreet, Inc., 806 So.2d at 1209. If they satisfied their burden, "the burden of persuasion shift[ed] to the party opposing arbitration." Greenstreet, Inc.,806 So.2d at 1209. Accordingly, we will then consider whether Dunlap presented evidence in opposition to the motion or presented a factually based predicate sufficient to invoke her right to conduct discovery.
 IV. A. Contract Calling for Arbitration
"`"[T]he party seeking to compel arbitration must prove . . . the existence of a contract calling for arbitration."'" Brown v.Denson, 895 So.2d 882, 885 (Ala. 2004) (quoting Owens v. CoosaValley Health Care, Inc., 890 So.2d 983, 986 (Ala. 2004)). When determining whether *Page 799 
a contract calling for arbitration exists, this Court applies the "`ordinary state-law principles that govern the formation of contracts.'" Oakwood Mobile Homes, Inc. v. Barger,773 So.2d 454, 459 (Ala. 2000) (quoting First Options of Chicago, Inc. v.Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985
(1995)).
As support for their motion to compel arbitration, Bill Heard and Berry attached copies of the two arbitration agreements Dunlap signed in connection with the purchase of the Durango. Those agreements state in relevant part:
 "[Dunlap] and [Bill Heard] agree that all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale . . . or financing of the vehicle, terms and provisions of the sale . . . or financing agreement, arrangements for financing, . . . or any other aspects of the vehicle and its sale . . . or financing shall be settled by binding arbitration conducted pursuant to the provision of 9 U.S.C. Section 1 et seq. . . . Without limiting the generality of the foregoing, it is the intention of [Dunlap] and [Bill Heard] to resolve by binding arbitration all disputes between them concerning the vehicle, its sale . . . or financing, . . . including disputes concerning the terms and conditions of the sale . . . or financing, . . . the terms and meaning of any documents signed or given in connection with negotiations for the sale . . . or financing, any representations, promises or omissions made in connection with negotiations for the sale . . . or financing of the vehicle. . . .
 "This Agreement is binding upon, and inures to the benefit of [Dunlap] and [Bill Heard] and the officers, employees, agents and affiliated entities of each of them. This Agreement will survive payment of [Dunlap's] obligation and any termination, cancellation or performance of the transactions between [Dunlap] and [Bill Heard]."
Dunlap does not dispute that she signed the arbitration agreements, nor does she dispute that Berry, as an employee of Bill Heard, is included within the scope of those agreements. Instead, Dunlap argues that Bill Heard and Berry cannot prove that a contract calling for arbitration exists because, she argues, the arbitration agreements are components of the Retail Purchase Contracts, which she says were rendered unenforceable because of the nonoccurrence of a condition precedent to those contracts, namely, Dunlap's qualifying for financing. Dunlap argues that Bill Heard and Berry cannot enforce arbitration agreements that are part of unenforceable contracts.
A provision in a contract "making the contract subject to the procurement of a loan to finance the purchase price is a valid condition precedent to performance." Duncan v. Rossuck,621 So.2d 1313, 1314 (Ala. 1993). The law concerning the effect of a condition precedent is clear:
 "`[W]here the parties to a proposed contract have agreed that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions specified have occurred or been performed.'"
Ex parte Payne, 741 So.2d 398, 403 (Ala. 1999) (quoting 17A Am.Jur.2d Contracts § 34 (1991)). Accordingly, when a contract makes securing financing a condition precedent to its performance, neither the contract nor any of its provisions become binding obligations unless and until financing is obtained. The Retail Purchase Contracts signed by Dunlap and Bill Heard in conjunction with the purchase of the Durango contain the following clause: *Page 800 
 "[O]n a credit transaction the purchaser(s) [sic] offer is not accepted and the transaction is not consummated until (a) approval in writing by . . . a responsible Bank or Finance Company."
No valid contract can exist without the acceptance of an offer.Southern Energy Homes, Inc. v. Hennis, 776 So.2d 105 (Ala. 2000). Thus, if the arbitration agreements signed by Dunlap and Bill Heard are to be considered a part of the Retail Purchase Contracts, the arbitration agreements are unenforceable. SeeDelta Constr. Corp. v. Gooden, 714 So.2d 975, 981 (Ala. 1998) ("a person cannot merely pick and choose the provisions in a contract that he wants to apply").
In arguing that the arbitration agreements are components of the Retail Purchase Contracts, Dunlap invites us to apply the principle this Court discussed in Weeden v. Asbury,223 Ala. 687, 690, 138 So. 267, 270 (1931):
 "[I]n the absence of anything to indicate a contrary intention, writings executed at the same time by the same parties for the same purpose, and in the course of the same transaction, are in the eye of the law one instrument, and will be received and construed together as constituting one contract and evidencing the intention of the parties."
This contemporaneous-writing principle is a rule of construction this Court uses when it is "necessary to ascertain the intention of the parties." Hunter-Benn Co. v. Bassett Lumber Co.,224 Ala. 215, 218, 139 So. 348, 349 (1932). However, "[i]f a contract is unambiguous on its face, there is no room for construction and it must be enforced as written." Southland Quality Homes, Inc.v. Williams, 781 So.2d 949, 953 (Ala. 2000).
This Court takes note of the fact that the arbitration agreements and the Retail Purchase Contracts are part of a series of documents Dunlap and Bill Heard signed essentially contemporaneously. We also note that both sets of documents were executed for the same broad purpose: to govern Dunlap and Bill Heard's obligations with respect to the sale of the Durango. However, the Retail Purchase Contracts Dunlap signed are not ambiguous when addressing the relationship of those contracts to the arbitration agreements:
 "This contract expresses the entire agreement between the parties, all previous verbal or written communications between the parties with reference to the subject matter hereof, excluding [sic] Arbitration Agreement, are merged herein."
The Retail Purchase Contracts expressly prohibit construing the arbitration agreements as part of the contracts. The Bailment/Conditional Delivery Agreement, also signed by Dunlap, stresses the independence of the arbitration agreement in even greater detail:
 "The Arbitration Agreement remains effective and enforceable even if your offer is not accepted or credit is not approved, accepted, and funded. [F]unding of the Contract is not a condition precedent to enforceability of the Arbitration Agreement."
In Lilley v. Gonzales, 417 So.2d 161, 163 (Ala. 1982), we stated that, "where the parties express without ambiguity their intention, no court can alter the agreement, and no room for judicial construction is left." Dunlap's argument that the arbitration agreements are components of the Retail Purchase Contracts is contradicted by the unambiguous language in the documents she has signed. This Court cannot alter unambiguous language in a contract by applying a rule of construction that is contrary to the intentions of the parties. Lilley,417 So.2d at 163 *Page 801 
("Where . . . the language of the contract is unambiguous and plain in its expression, the court cannot alter the agreement by construction but rather must expound it as made by the parties."). Thus, we hold that the arbitration agreements are not components of the Retail Purchase Contracts.
Accordingly, Dunlap incorrectly relies on Ex parte Payne, supra, and Ex parte Cobb, 781 So.2d 208 (Ala. 2000), to argue that the nonoccurrence of the condition precedent — that she obtain financing — invalidates her agreement to arbitrate. InPayne, we held that the failure to satisfy the condition precedent rendered the arbitration clause unenforceable because the condition precedent and the arbitration clause were not only part of the same contract, but they both also appeared in a single document. Payne, 741 So.2d at 400. Thus, we stated that "in order for Jay Pontiac to compel arbitration of Payne's counterclaims, the Retail Purchase Order containing the arbitration provision must be a binding contract." Payne,741 So.2d at 403.
Although Cobb held that a financing condition precedent in a retail buyer's order rendered an arbitration provision in a separate lease agreement unenforceable, there was no evidence before this Court showing that the parties intended that the documents be treated as separate contracts. Instead, the evidence in the record showed that Serra Toyota viewed the Cobbs' failure to obtain financing as having voided both agreements:
 "[T]he record before this Court shows that, after the Cobbs' financing request was rejected, Serra did not view the Lease Agreement as a binding contract. Attached to the Cobbs' mandamus petition is a copy of the Lease Agreement containing the arbitration provision Serra seeks to enforce. Written across the first page of the Lease Agreement and across the first page of the Retail Buyer's Order are the words `VOID' and `TURNED DOWN.'"
Cobb, 781 So.2d at 211 (capitalization in original). Thus, Serra Toyota's argument that the lease agreement containing the arbitration provision remained an enforceable contract was inconsistent with Serra Toyota's own treatment of the Cobbs' failure to satisfy the condition precedent in the retail buyer's order. Accordingly, the documents were properly construed as a single contract that was invalidated by the Cobbs' failure to qualify for financing. Dunlap has not introduced similar evidence in the present case. Thus, both Payne and Cobb are distinguishable.
Dunlap argues that, even if the arbitration agreements are not made unenforceable by the failure to meet the financing condition precedent in the Retail Purchase Contracts, Bill Heard and Berry still cannot prove the existence of a contract calling for arbitration because the arbitration agreements are not, by themselves, valid contracts. "The requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to the terms essential to the formation of the contract." Strength v. Alabama Dep't of Fin., 622 So.2d 1283,1289 (Ala. 1993).
In the arbitration agreements, Bill Heard offered to disclaim its rights to pursue litigation in return for Dunlap's promise to do the same. Dunlap accepted Bill Heard's offer by signing the arbitration agreements. See Merrill Lynch, Pierce, Fenner Smith, Inc. v. Kilgore, 751 So.2d 8, 11 (Ala. 1999) ("Conduct of one party to a contract from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance."). *Page 802 
Further, both Dunlap and Bill Heard forfeited their right to a jury trial by agreeing to pursue arbitration. The destruction of this legal right was sufficient consideration for the agreements.See Smoyer v. Birmingham Area Chamber of Commerce,517 So.2d 585, 587 (Ala. 1987) ("to constitute consideration for a promise, there must have been an act, a forbearance, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise").
Finally, Dunlap does not dispute that the arbitration agreements bear both her signature and the signature of a representative from Bill Heard. In Crown Pontiac, Inc. v.McCarrell, 695 So.2d 615, 618 (Ala. 1997), we noted that "[t]he purpose of a signature is to show `mutuality and assent,' which are required for a contract to be binding." Thus, because the arbitration agreements involve an offer, an acceptance, consideration, and mutual assent, they possess the requisite elements of a contract. Strength, 622 So.2d at 1289. Therefore, Dunlap is incorrect when she asserts that the arbitration agreements are not, standing alone, valid contracts.
Dunlap next argues that the arbitration agreements are not enforceable contracts because, she says, the entire underlying transaction was fraudulent. However, in Johnson Mobile Homes ofAlabama v. Hathcock, 855 So.2d 1064 (Ala. 2003), we held that fraud in the inducement — the misrepresentation of a material fact concerning the subject matter of the underlying transaction — is a matter to be considered in arbitration, not a basis for finding that an agreement to arbitrate is invalid.855 So.2d at 1067. Accordingly, Dunlap's argument is without merit.
Finally, Dunlap argues that the arbitration agreements that Bill Heard and Berry rely upon to prove that a contract calling for arbitration exists are not broad enough to cover the claims raised in her complaint. Yet Dunlap's complaint asserts that the essence of her agreement with Bill Heard "was that [Dunlap] would trade in her 1999 Isuzu Rodeo; Bill Heard would pay off the remaining balance owed on the Rodeo; [and Dunlap] would purchase a 2002 Dodge Durango."
In the arbitration agreements, Dunlap agreed "to resolve by binding arbitration all disputes between them concerning the vehicle, its sale . . . or financing, . . . including disputes concerning . . . any representations, promises or omissions made in connection with negotiations for the sale . . . or financing of the vehicle." Dunlap's promise to trade in her Rodeo, as well as Bill Heard's promise to pay off any money she owed on the Rodeo, was part of the negotiations involved in the purchase and financing of the Durango. Thus, the language used in the arbitration agreements is broad enough to encompass Dunlap's claims. Accordingly, Bill Heard and Berry have met their burden of proving the existence of a contract calling for the arbitration of Dunlap's dispute.
 B. Contract Involving an Interstate Commercial Transaction
In addition to demonstrating the existence of a contract calling for arbitration, Bill Heard and Berry are required to show "`"that the contract `is a "contract evidencing a transaction involving commerce" within the meaning of the Federal Arbitration Act.'"'" Brown, 895 So.2d at 885 (quoting CitizensBank v. Alafabco, Inc., 539 U.S. 52, 53, 123 S.Ct. 2037,156 L.Ed.2d 46 (2003), quoting in turn 9 U.S.C. § 2).
Dunlap filled out credit applications as part of the negotiations for obtaining financing to pay for the Durango. Allen's affidavit states that Bill Heard used those *Page 803 
applications to obtain Dunlap's credit information from Equifax Services, Inc., a company based in Atlanta, Georgia. Allen's affidavit also states that Bill Heard contacted five different out-of-state corporations in an attempt to obtain financing for Dunlap's purchase of the Durango. Bill Heard also introduced evidence showing that the used Durango Dunlap negotiated to purchase had been bought and sold at auctions in Michigan and Tennessee.
Prior cases have held that evidence similar to that introduced here by Bill Heard and Berry was enough to show that a contract involved an interstate commercial transaction. See, e.g., DanWachtel Ford, Lincoln, Mercury, Inc. v. Modas, 891 So.2d 287,292 (Ala. 2004); Serra Toyota, Inc. v. Johnson, 876 So.2d 1125
(Ala. 2003); Anniston Lincoln Mercury Dodge v. Conner,720 So.2d 898 (Ala. 1998). However, Dunlap argues that the present case is distinguishable from those cases because, she argues, without the sale of the Durango, "the arbitration agreement has no application to and no [e]ffect on any transaction involving interstate commerce."
The fact that the sale of the Durango was not completed is irrelevant to our inquiry. In the arbitration agreements, Dunlap, Bill Heard, and Berry agreed to arbitrate disputes concerning "any of the negotiations leading to the sale . . . or financing of the vehicle." Dunlap does not dispute that she filled out the credit applications as part of the negotiations to obtain financing nor does she dispute that those applications were forwarded to an out-of-state company in order for Bill Heard to obtain her credit information. Because this interstate transaction between Bill Heard and Equifax was undertaken in an effort to determine whether it would be possible for Dunlap to obtain financing to purchase the Durango, the transaction was part of the "negotiations leading to the sale or financing of the vehicle." Accordingly, Bill Heard and Berry have met their burden of proving that the agreements involve an interstate commercial transaction.[2]
 V.
"[O]nce a moving party has satisfied its burden of production by making a prima facie showing that an agreement to arbitrate exists in a contract relating to a transaction substantially affecting interstate commerce, the burden of persuasion shifts to the party opposing arbitration." Greenstreet, Inc.,806 So.2d at 1209. Thus, once Bill Heard and Berry made a prima facie showing of the existence of a contract that involved an interstate commercial transaction and that called for arbitration, the burden then shifted to Dunlap to present "`substantial evidence' of some defense to arbitration." Exparte Horton Family Housing, Inc., 882 So.2d 838, 841 (Ala. 2003). Yet, the record reveals that Dunlap did not provide the trial court with any evidence in opposition to Bill Heard and Berry's motion. *Page 804 
Ordinarily, a trial court is required to grant a motion to compel arbitration when the opposing party fails to introduce evidence in opposition. See, e.g., First Family Fin. Servs. v.Jackson, 786 So.2d 1121, 1130 (Ala. 2000). However, this Court has recognized:
 "Under certain circumstances, the evidence necessary to challenge the enforceability of an arbitration provision may be exclusively within the other party's possession. Under those circumstances, the party opposing arbitration will be unable or virtually unable to obtain the necessary evidence except through discovery."
Greenstreet, Inc., 806 So.2d at 1208. Thus, Greenstreet Inc., "fashioned an exception [to the general rule requiring a trial court to grant a properly supported motion to compel arbitration when it is not rebutted by substantial evidence] where substantial evidence to defeat the motion may exist, but the opposing party is `unable or virtually unable to obtain the necessary evidence except through discovery.'" Horton FamilyHousing, Inc., 882 So.2d at 841 (quoting Greenstreet, Inc.,806 So.2d at 1208).
However, a trial court's discretion to delay ruling on a properly supported motion to compel arbitration to allow the opposing party to conduct discovery is not without restraints. "[I]n arbitration, . . . `discovery is the exception and not the norm.'" Horton Family Housing, Inc., 882 So.2d at 841 (quotingGreenstreet, Inc., 806 So.2d at 1207). "[W]hile a showing of good cause is not ordinarily required in order to justify discovery in a civil action, in a case ostensibly subject to arbitration, as established by a properly supported motion to compel, to require a party to present some degree of factual specificity as to the necessity of the discovery does not impose an unreasonable burden." Greenstreet, Inc., 806 So.2d at 1209. Accordingly:
 "[a] party must present a factually based predicate before a right to conduct discovery regarding matters that could invalidate the agreement to arbitrate arises. At a minimum, a party opposing a properly supported motion to compel arbitration and seeking discovery on issues that could invalidate the arbitration agreement must provide an affidavit describing the circumstances that are within its knowledge and that are relevant to its claimed defenses to arbitration."
Greenstreet, Inc., 806 So.2d at 1209 (citations omitted).
Dunlap failed to attach an affidavit to her response in opposition to Bill Heard and Berry's motion to compel arbitration or to introduce any other evidence describing how the discovery she requested would relate to the issue whether the arbitration agreements are enforceable. Moreover, Dunlap's brief in opposition to the motion to compel arbitration did not request discovery on issues regarding arbitration, but instead requested discovery on the factors relating to determining class certification. In an effort to defend the trial court's ruling, Dunlap now makes the conclusory argument that the "same discovery that would seek evidence relevant to a fraudulent scheme perpetrated on Dunlap would be relevant to the issue of class certification." However, our determination of whether the trial court exceeded its discretion in ruling on a discovery order is limited to examining the "facts that were before the trial court." Greenstreet, Inc., 806 So.2d at 1206. Dunlap's conclusory allegations are not sufficient.
"Under the factually-based-predicate standard . . . it would be a clear abuse of the trial court's discretion to allow . . . discovery without a factual showing as to *Page 805 
why that discovery was justified." Greenstreet, Inc.,806 So.2d at 1210. Accordingly, Bill Heard and Berry have demonstrated that the trial court exceeded its discretion by allowing Dunlap to engage in discovery on the question of arbitrability.
 VI.
"If [a] party presents no evidence in opposition to a properly supported motion to compel arbitration, then the trial court should grant the motion to compel arbitration." Greenstreet,Inc., 806 So.2d at 1209. Bill Heard and Berry have proven that they have a clear legal right to an order compelling Dunlap to arbitrate her claims. Further, Dunlap failed to introduce any evidence that would allow the trial court to exercise its discretion by delaying a ruling on the motion to allow Dunlap to conduct discovery on the question of arbitrability. Therefore, we grant the petition for the writ of mandamus and direct the trial court to vacate its order allowing Dunlap to conduct discovery in this case and to enter an order granting Bill Heard and Berry's motion to compel arbitration.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and STUART and BOLIN, JJ., concur.
HARWOOD, J., concurs in the result.
[1] On March 9, 2005, this Court ordered answer and briefs on Bill Heard and Berry's petition for the writ of mandamus. In response to our order, the trial court placed Dunlap's action on its administrative docket.
[2] Moreover, "Congress' Commerce Clause power `may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice' . . . subject to federal control." Citizens Bank v. Alafabco, Inc.,539 U.S. 52, 56-57, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (quoting Mandeville Island Farms, Inc. v. American Crystal SugarCo., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948)). Thus, to prevail on their motion to compel arbitration under the Federal Arbitration Act, Bill Heard and Berry were not required to prove Dunlap's direct involvement in a particular transaction affecting interstate commerce when a general practice associated with the contract between Bill Heard and Dunlap "bear[s] on interstate commerce in a substantial way." Alafabco, Inc.,539 U.S. at 57, 123 S.Ct. 2037.