Rel: December 15, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

————————————

### SC-2023-0159

————————————

**Brickhouse Capital, LLC**

**v.**

**Coastal Cryo AL, LLC, and Andres L. Santa**

**Appeal from Baldwin Circuit Court**
**(CV-21-900028)**

COOK, Justice.

This is a fraudulent-inducement case.  The jury found for the third-party plaintiffs, Andres L. Santa and Coastal Cryo, AL, LLC ("Coastal"), and the Baldwin Circuit Court entered a judgment on the jury's verdict.

Now the third-party defendant, Brickhouse Capital, LLC ("Brickhouse"), appeals.

Well-settled Alabama fraud law requires reasonable reliance by the plaintiff, which normally includes a duty to read a contract before signing it. When a plaintiff fails to do so, this Court may determine as a matter of law that the plaintiff's reliance on the alleged fraud of the other party to the contract was unreasonable and that the plaintiff's fraud-in-the-inducement claim fails. Alabama law does not relax that requirement, and there is no enhanced duty to disclose on the part of the other contracting party simply because a contract is entered via an electronic transaction -- here, via an Internet-based contract-management platform known as "DocuSign."

As explained below, because Santa and Coastal failed to satisfy this crucial element of their fraud-in-the-inducement claim, we reverse the judgment in their favor and render a judgment in favor of Brickhouse.

<u>Facts and Procedural History</u>

In March 2019, Santa purchased Coastal, a cryotherapy business in Foley. As a result of that purchase, Santa inherited a "CryoSkin," a device used for cryotherapy. That device, however, was subject to a

2

revenue-sharing agreement that required Santa to pay the corporation that manufactured the CryoSkin device 50% of Coastal's profits.

Because of that revenue-sharing agreement, Santa decided to replace the CryoSkin device with something more economical. While shopping around for a replacement, Santa discovered the "CryoFusion," a device manufactured by BWF Technologies ("BWF"), on a Facebook social-media page for professionals in the cryotherapy business.

After coming across the CryoFusion on Facebook, Santa contacted BWF about the device, and BWF's representative directed him to Taylor Frisch at Sleek Body Sculpting ("Sleek"). A few days later, Frisch directed Santa to Dustin Christianson at Brickhouse to discuss financing the device.

After a short email exchange, Christianson and Santa spoke on the phone. Santa testified that, during that phone call, he said to Christianson: "[H]ey, I don't know Taylor. Can you inform -- is this a legitimate guy, is this a legitimate machine. It's brand new. You know, is it going to work as they're saying that it's going to work." According to Santa, Christianson responded: "[Y]es, it will."

At the end of the call, Christianson sent Santa an email with a lease

application attached to it and told Santa to "print the attached application and scan it back or apply online." That application referred to Santa as the "lessee" nine times and used the term "Lease Application" twice. In fact, directly above Santa's signature, the application states: "This Lease Application is an application for a finance lease, as that term is defined in the Uniform Commercial Code as adopted by Arizona." That application also authorized Brickhouse to disclose the information submitted by Santa to Brickhouse's "assigns, affiliates and other third parties." Santa completed and signed that application shortly after receiving it.

A week later, a different Brickhouse employee emailed Santa a DocuSign link that read "REVIEW DOCUMENT" and requested that Santa "review the attached proposal, … initial and sign where indicated," upload a copy of his driver's license, and provide a "business check in the amount of $1,372.18 (applied to your first lease payment and $250 documentation fee at funding)." (Capitalization in original.)

Santa initialed and signed that second document via the DocuSign platform. That document was titled "Lease Proposal." The lease proposal stated: "Brickhouse … is pleased to propose the following lease terms for

4

your consideration." The proposal also referred to Santa's monthly payment as a "lease payment," referred to Coastal as "lessee" eight times, including in the line directly above the signature block, and referred to Brickhouse as "lessor" one time.

Over a month later, on May 17, 2019, Santa received and signed a third document from Brickhouse. That document also came via the DocuSign platform and was titled "Lease Agreement." It listed Pawnee Leasing Corp. ("Pawnee"), an out-of-state equipment-leasing and financing company, as "lessor," Coastal as "lessee," and Santa as "guarantor." The agreement also stated in at least 40 different places that it was a "lease." In addition to containing that terminology, the agreement also provided the following warning directly above where Santa was directed to place his signature: "DO NOT SIGN THIS LEASE UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS (INCLUDING PAGES 2-3)." (Capitalization in original.) Finally, directly above where Santa was directed to initial the last page, the agreement stated in large font: "if you request in writing we will send you a copy of this Lease in larger type."

Although Santa admitted that he had signed that third document

via the DocuSign platform, he testified at trial that he had not realized that the document was a lease agreement with Pawnee until after he had signed it. He also testified that he did not read or review the lease agreement "before [he] signed it" because, according to his testimony at trial, "[w]ith DocuSign, you can't [read the document] until you click all the buttons and you get to the end."

At trial, Brickhouse's corporate representative testified that, after a person receives an email with the DocuSign link to a document, the DocuSign platform allows the person to review the document by "scroll[ing] through that document like any other document on your screen." She also testified that there is "an option at the top [of the screen] to download [the document]. And then there's another option at the end to download [the document]. And that's how you can review [the document] and when you're ready to sign, there's a button to click [to] start signing."

A little over a month after Santa signed the lease agreement with Pawnee, Santa received the new CryoFusion device from Sleek. According to the record, from July 15, 2019, to July 15, 2020, Santa made regular monthly payments to Pawnee per the terms of the lease

6

agreement. However, when Santa missed his monthly payments in August and September of 2020, Pawnee sent him a notice of acceleration.

Eventually, Pawnee brought a breach-of-contract action against Coastal and Santa to recover the remaining balance on the lease agreement. In their answer to Pawnee's complaint, Coastal and Santa denied liability and added Brickhouse as a third-party defendant to the lawsuit. Coastal and Santa asserted multiple claims against Brickhouse, including a claim of fraud in the inducement.

After discovery was completed and Brickhouse's numerous dispositive motions were denied, Pawnee's breach-of-contract claim and Coastal and Santa's fraudulent-inducement claim were tried before a jury on December 12, 2022. At the close of all the evidence, Brickhouse moved for judgment as a matter of law. The judge denied Brickhouse's motion, and the case was submitted to the jury.

The jury returned a verdict against Coastal and Santa on Pawnee's breach-of-contract claim and awarded Pawnee damages in the amount of $1. The jury also returned a verdict against Brickhouse on Coastal and Santa's fraudulent-inducement claim. It awarded Coastal and Santa compensatory damages in the amount of $20,000 and punitive damages

7

in the amount of $60,000. The trial court entered its judgment on December 22, 2022, and Coastal and Santa satisfied the $1 judgment in favor of Pawnee.

Brickhouse, however, filed a renewed motion for a judgment as a matter of law or, in the alternative, for a new trial. In its motion, Brickhouse argued that Coastal and Santa had failed to present evidence at trial indicating that Santa had "reasonably relied" upon any statement or omission by Brickhouse. Specifically, Brickhouse argued that Coastal and Santa had failed to present any evidence that excused Santa from his duty to read the lease agreement and investigate before signing it. Stated simply, Brickhouse argued that it was entitled to a judgment as a matter of law or a new trial because the evidence presented at trial conclusively showed that Santa's reliance was not reasonable because he had failed to read the lease agreement or investigate the terms of the lease agreement before signing it.

In response, Coastal and Santa argued that Santa's duty to read and investigate the terms of the lease agreement was excused because the DocuSign platform restricted Santa's right to review and read the lease agreement during the signing process. According to them, because

8

the jury is responsible for deciding reasonableness when the ordinary rule pertaining to a signee's duty to read and investigate does not apply, the trial court was required to defer to the jury's finding that Santa's reliance on Brickhouse's representations or omissions was reasonable.

On April 24, 2023, Brickhouse's postjudgment motion was denied by operation of law under Rule 59.1, Ala. R. Civ. P. Brickhouse now appeals.

## Standard of Review

This Court reviews a trial court's denial of a motion for a judgment as a matter of law de novo. Protective Life Ins. Co. v. Apex Parks Grp., LLC, 322 So. 3d 1027, 1038-39 (Ala. 2020). In doing so, we must determine "'"whether there was substantial evidence, when viewed in the light most favorable to the nonmoving party, to produce a factual conflict warranting jury consideration."'" Id. at 1038 (citations omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989).

## Discussion

9

This case presents two questions on appeal. First, this Court must decide whether Santa reasonably relied upon the alleged fraud of Brickhouse. Second, we must determine if the use of an electronic-signature program -- here, the DocuSign platform -- warrants the modification of our current law on reasonable reliance and the duty of disclosure.

## I. Fraud Under Our Current Law

We first address the threshold question whether the evidence presented at trial was sufficient to warrant a jury determination about Brickhouse's conduct under our current law governing fraud. "'"The elements of fraud are (1) a false representation (2) of a material existing fact (3) <u>reasonably relied upon by the plaintiff</u> (4) who suffered damage as a proximate consequence of the misrepresentation.'"'" <u>Exxon Mobil Corp. v. Alabama Dep't of Conservation & Nat. Res.</u>, 986 So. 2d 1093, 1114 (Ala. 2007) (quoting <u>Saia Food Distribs. & Club, Inc. v. SecurityLink from Ameritech, Inc.</u>, 902 So. 2d 46, 57 (Ala. 2004), quoting in turn <u>Waddell & Reed, Inc. v. United Invs. Life Ins. Co.</u>, 875 So. 2d 1143, 1160 (Ala. 2003), quoting in turn <u>Padgett v. Hughes</u>, 535 So. 2d 140, 142 (Ala. 1988)). To establish fraud, a plaintiff may assert a claim of either (1)

fraudulent misrepresentation or (2) fraudulent suppression/failure to disclose. Cherokee Farms, Inc. v. Fireman's Fund Ins. Co., 526 So. 2d 871, 875 (Ala. 1988).

The parties do not clearly identify the alleged fraud in this case. From the briefs, we assume that the allegedly fraudulent conduct either (1) relates to the fact that the transaction was a lease rather than a loan or (2) relates to alleged oral statements by Brickhouse's agent, Dustin Christianson, vouching for the manufacturer of the CryoFusion device and the device's anticipated performance. Also, because the parties' briefs are unclear, we will consider Coastal and Santa's fraudulent-inducement claim as to the lease both (1) as a claim of fraudulent misrepresentation and (2) as a claim of fraudulent suppression/failure to disclose.

A. Fraudulent Misrepresentation As to Whether the Agreement At Issue Was a "Lease"

A misrepresentation amounts to fraud when "'one party[] misrepresent[ed] a material fact concerning the subject matter of the underlying transaction and the other party[] rel[ied] on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action.'" Johnson Mobile Homes of Alabama, Inc. v.

11

Hathcock, 855 So. 2d 1064, 1067 (Ala. 2003) (quoting <u>Oakwood Mobile Homes, Inc. v. Barger</u>, 773 So. 2d 454, 459 (Ala. 2000)) (emphasis omitted). However, it is not enough for the party claiming fraud to simply show that there was a misrepresentation upon which he or she relied. <u>See, e.g.</u>, <u>Foremost Ins. Co. v. Parham</u>, 693 So. 2d 409, 421 (Ala. 1997). Rather, the party claiming fraud must also demonstrate that his or her reliance on the misrepresentation was reasonable. <u>Wright Therapy Equip., LLC v. Blue Cross & Blue Shield of Alabama</u>, 991 So. 2d 701, 706 (Ala. 2008) ("This Court has stated that 'fraudulent-inducement claim[s] [are] governed by the "reasonable-reliance" standard.'" (citation omitted)).

Under the reasonable-reliance standard, this Court has repeatedly affirmed that "a plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon a defendant's oral representations that contradict the written terms in the documents." <u>AmerUs Life Ins. Co. v. Smith</u>, 5 So. 3d 1200, 1208 (Ala. 2008). As this Court explained in <u>Alfa Life Insurance Corp. v. Colza</u>, 159 So. 3d 1240, 1252 (Ala. 2014),

> "[w]e do not think it unreasonable to conclude as a
> matter of law that, in this day and age, any adult

12

of sound mind capable of executing a contract necessarily has a conscious appreciation of the risk associated with ignoring documents containing essential terms and conditions related to the transaction that is the subject of the contract."

In this case, Brickhouse argues that any misrepresentations that it allegedly made to Coastal and Santa cannot be used to support a fraud claim against it because (1) Coastal and Santa do not dispute that Santa failed to read the lease agreement before signing it and (2) the written terms in the agreement contradict any alleged misrepresentations that the agreement was a loan agreement with Pawnee.

Reasonable reliance is an element of a fraud claim. This Court has repeatedly held, as a matter of law, that evidence of reasonable reliance is lacking when a plaintiff fails to read documents that contradict the alleged misrepresentations. Alfa Life Ins. Corp., 159 So. 3d at 1254-55; Foremost Ins. Co., 693 So. 2d at 421; Brushwitz v. Ezell, 757 So. 2d 423, 430 (Ala. 2000); Syx v. Midfield Volkswagen, Inc., 518 So. 2d 94, 98 (Ala. 1987).

Here, it is undisputed that Santa and Coastal received multiple documents stating that the agreement at issue was a lease. This included (1) the lease agreement itself, which Santa signed; (2) the lease

13

application, which referred to Santa as the "lessee" nine times and used the term "Lease Application" twice (and which Santa signed); and (3) the "Lease Proposal" (which Santa previously signed via the DocuSign platform), which stated that it was a proposal for a "lease," referred to payments as "lease payment[s]," and referred to Coastal as "lessee" eight times. It is also undisputed that Santa failed to read the lease agreement before he signed it. Under these circumstances, Coastal and Santa cannot establish reasonable reliance in support of their claim.[1]

---

[1] In addition, Santa testified at trial that he had stated to Christianson, Brickhouse's agent: "[H]ey, I don't know [the manufacturer's sales representative]. Can you inform -- is this a legitimate guy, is this a legitimate machine. It's brand new. You know, is it going to work as they're saying that it's going to work." According to Santa, Christianson responded: "[Y]es, it will." Brickhouse contends that Christianson's response was "puffery" or "sales talk." "[S]tatements of opinion amounting to nothing more than 'puffery' or predictions as to events to occur in the future are not statements concerning material facts upon which individuals have a right to act and, therefore, will not support a fraud claim." Fincher v. Robinson Bros. Lincoln-Mercury, 583 So. 2d 256, 259 (Ala. 1991) (holding that a car salesman's oral statements that a car "was a 'fine car,' that it 'would be dependable and reliable and that it would give [the buyer] good service,' that it 'was well-suited for [the buyer's] purposes,' and that it 'was well and properly constructed,'" 583 So. 2d at 258, were not false statements of material facts because the statements were merely the salesman's opinions and predictions on how the car would work in the future).

14

B. <u>Fraudulent Suppression As to Whether the Agreement at Issue Was a "Lease"</u>

Coastal and Santa argue, however, that Santa's failure to read the agreement is not fatal to their fraudulent-inducement claim because, they say, the DocuSign platform did not permit Santa to review and to sign the agreement contemporaneously. Santa and Coastal argue "<u>that there must be time for the signee to have the contract reviewed by counsel, etc. or for the consumer to review the hard copy and/or have the opportunity to rescind if agreements were false, misleading or incorrect</u>" and that we should defer to the jury's verdict because its "finding is consistent with existing caselaw." Santa and Coastal's brief at 31 (emphasis added).

As an initial matter, Coastal and Santa do not cite any statute, case, or other legal authority to support their argument. It is also unclear if they are (1) asking for an enhanced duty to disclose because this is an electronic transaction or (2) if they are asking for the duty-to-read

---

Santa and Coastal do not argue in their brief on appeal that Christianson's oral statements amounted to fraud, nor do they refute Brickhouse's assertion in its appellate briefing that the statements were "puffery" or "sales talk." Thus, we need not decide this issue, and we hold that Coastal and Santa waived any such argument.

requirement for reasonable reliance to be relaxed in this case. We will consider both possible arguments.

The concealment of a fact or the failure to disclose a fact amounts to fraud when there is: "'(1) the suppression of a material fact (2) that the defendant has a duty to communicate (3) because of a confidential relationship between the parties or because of the circumstances of the case and (4) injury resulting as a proximate consequence of the suppression.'" Banks v. SCI Alabama Funeral Servs., Inc., 801 So. 2d 20, 24 (Ala. Civ. App. 2001) (quoting Ex parte Dial Kennels of Alabama, Inc., 771 So. 2d 419, 421 (Ala. 1999)). The first element can be established if a party actively conceals (that is, suppresses) a material fact or fails to disclose a fact when there is some special reason giving rise to a duty to disclose. Chiepalich v. Chiepalich, [Ms. SC-2023-0191, Aug. 11, 2023] ____ So. 3d ____, ____ (Ala. 2023). A duty to disclose "'may arise from the confidential relations of the parties or from the particular circumstances of the case.'" Freightliner, L.L.C. v. Whatley Cont. Carriers, L.L.C., 932 So. 2d 883, 891 (Ala. 2005) (quoting § 6-5-102, Ala. Code 1975). Whether there was "'"a duty to disclose is a question of law to be determined by the trial court,"'" and in making its determination, "'[t]he trial court

16

must consider … "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances."'" Id. (quoting Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So. 2d 665, 676-77 (Ala. 2001), quoting in turn Barnett v. Funding Plus of America, Inc., 740 So. 2d 1069, 1074 (Ala. 1999), and State Farm Fire & Cas. Co. v. Owen, 729 So. 2d 834, 842-43 (Ala. 1998)) (emphasis added).

Coastal and Santa make no suppression argument here. For instance, they make no claim that Brickhouse manipulated the DocuSign platform to conceal information, and there are no facts in the record that would indicate any such manipulation occurred. Although Santa used the DocuSign platform earlier in this very same transaction when he signed the lease proposal from Brickhouse, he made no objection at the time about the use of the DocuSign platform, and he makes no claim now that there was anything improper about the use of the platform at that time. Moreover, there is no evidence indicating that Brickhouse played any role in the creation of the DocuSign platform, which all parties agree is a well-known and widely used Internet-based contract-management platform.

To the extent that Santa and Coastal are arguing that the electronic nature of the transaction created the duty to disclose, they are mistaken. Alabama law has long held that "'mere silence in the absence of a duty to disclose is not fraudulent'" and that "'whether one has a duty to speak depends upon a fiduciary, or other, relationship of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances of the case.'" Freightliner, 932 So. 2d at 891 (quoting Mason v. Chrysler Corp., 653 So. 2d 951, 954 (Ala. 1995)). Stated differently, absent a confidential relationship or other particular circumstance giving rise to the duty, there is "'no obligation to disclose information'" when the parties "'deal with each other at arm's length.'" Id. (quoting Mason, 653 So. 2d at 955). Here, Coastal and Santa do not allege, and the record does not show, that a confidential or fiduciary relationship existed between the parties. And, as noted above, the fact that the transaction involved a lease was disclosed in numerous ways in numerous documents, and Coastal and Santa provide no Alabama authority indicating that there must be yet another disclosure simply because this was an electronic transaction.

Coastal and Santa also appear to claim that the use of the DocuSign

platform violates a signee's "reasonable rights of review" and therefore excuses the signee from the duty-to-read rule, because, they say, the DocuSign platform does not allow a signee to review a document "<u>during</u> the actual signing process."  Santa and Coastal's brief at 14 (emphasis added).  This is mistaken both as a matter of law and matter of fact.

The duty-to-read rule places a duty on <u>the signee</u> to read a contract before signing it, rather than creating some duty on the defendant. <u>Alfa Life Ins. Corp. v. Reese</u>, 185 So. 3d 1091, 1104 (Ala. 2015). This Court's prior decisions have repeatedly affirmed "the strict duty of a party to read the documents he or she is provided in connection with a transaction -- a duty that is limited only by the extremely narrow grounds set forth in <u>Potter v. First Real Estate Co.</u>, 844 So. 2d 540 (Ala. 2002)."  <u>Colza</u>, 159 So. 3d at 1255. Under those extremely narrow grounds, "the duty-to-read rule may be avoided when … there are special circumstances or a special relationship between the parties or the plaintiff suffers from a disability rendering him or her unable to discern the contents of the document." <u>Reese</u>, 185 So. 3d at 1104 (citing <u>Potter v. First Real Estate Co.</u>, 844 So. 2d 540, 548-51 (Ala. 2002)).

Coastal and Santa's brief does not mention -- let alone explain --

19

how any of the foregoing exceptions are applicable in this case. Coastal and Santa do not allege, and the record does not reflect, that Santa suffers from a disability that prevented him from reading and understanding the lease agreement or that a confidential relationship existed between Santa and Brickhouse. Contra Potter, 844 So. 2d at 543 (holding that special relationship existed between the buyers' and the seller's real-estate agent, who told the buyers that she represented the buyers "as much as she represented the seller" of the property the buyers were purchasing).

Moreover, to the extent that Coastal and Santa allege that the characteristics of the DocuSign platform's signature process amount to "special circumstances" that relieved Santa of the duty to read, this Court has previously held that a party must offer some authority in support of his or her proposition that a "special circumstance" exists. See Reese, 185 So. 3d at 1104. For example, in Reese, a signee brought a fraudulent-inducement claim against the defendant on the ground of fraudulent misrepresentation; however, the undisputed facts of the case revealed that the signee had signed an insurance-policy application that contradicted any earlier fraudulent representation and that she "did not

20

read the application." Id. at 1098. In an attempt to overcome the duty-to-read rule, the signee argued that her reliance had been reasonable because "the fact that the application was completed on a laptop computer and had to be signed on a separate signature pad constitute[d] 'special circumstances'" that took away her "reasonable opportunity" to read the application and thus excused her from the duty to read. Id. at 1103-04. Unsurprisingly, this Court held that the signee had failed to prove that the "special circumstance" exception applied because she had not offered any authority in support of her argument and that, as a result, the signee's reliance had been unreasonable as a matter of law in light of the duty-to-read rule because she had decided to "'blindly trust[]' the [defendant's] representations rather than taking even the most basic of precautions to 'safeguard [her] interests.'" Id. at 1103 (quoting Colza, 159 So. 3d at 1252). The same is true here.

Furthermore, Coastal and Santa do not argue, much less present any evidence, indicating that Santa told Brickhouse that he was unable to read the lease agreement because of the DocuSign platform's signature process or that Santa told Brickhouse that he needed additional disclosures or additional time. There is evidence, however, indicating

21

that, at the time he signed the lease agreement, Santa was a seasoned businessman and had used the DocuSign platform on previous occasions.[2]

Thus, contrary to Costal and Santa's interpretation of the duty-to-read rule, we hold that the duty-to-read rule does not impose a duty on a contract presenter to make certain that the other party signing the

---

[2]Santa and Coastal contend that "the actual contents of the document <u>cannot be viewed during the signature process</u>" when using the DocuSign platform. Santa and Coastal's brief at 30 (emphasis in original). However, Brickhouse's corporate representative testified that the DocuSign platform's signature process allows a signee to review the agreement <u>before</u> clicking the button that initiates the signing process and to download the document <u>before</u> clicking the button. Specifically, she testified that the signature process starts "when you receive a link to sign a document [via the DocuSign platform], [and] you click on it." According to her, after the signee clicks on the link, the signee has the "option at the top [and the end] to download" the document and to "scroll through th[e] document like any other document on your screen" before "sign[ing] it." When asked about the point at which a signee has the ability to sign the document, Brickhouse's corporate representative explained that a signee "can <u>review</u> [the document] and <u>when [he or she is] ready to sign</u>, there's a button to click [to] start signing." Santa and Coastal offered no testimony or evidence to contradict of Brickhouse's corporate representative's statements.

Notably, in their appellate briefs, both sides cite to the DocuSign website, which contains detailed information on the operation of the DocuSign platform (and videos, posted on the YouTube website, on the operation of the DocuSign platform). Because that information was not presented to the jury by anyone, we choose not to rely upon it.

contract actually reads the contract, absent the above-mentioned exceptions. AmerUs Life Ins. Co., 5 So. 3d at 1207 ("'"If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, volunti [sic] non fit injuria."'" (quoting Torres v. State Farm Fire & Cas. Co., 438 So. 2d 757, 759 (Ala. 1983), quoting in turn Munroe v. Pritchett, 16 Ala. 785, 789 (1849))).

Therefore, in light of our current law and the undisputed evidence presented at trial, we hold that Santa and Coastal's fraudulent-inducement claim fails because Santa's reliance on any representation by Brickhouse was not reasonable as a matter of law and no special duty to disclose existed simply because this was an electronic transaction. AmerUs Life Ins. Co., 5 So. 3d at 1208.

## II. No New Special Fraud Rules Governing Electronic Transactions

We also decline to change our caselaw governing fraudulent-inducement claims simply because this case involved an electronic transaction between the parties. In the Alabama Uniform Electronic Transactions Act ("the Act"), § 8-1A-1 et seq., the Legislature indicated that it is an important public policy of the State of Alabama that

transactions not be penalized simply because they are electronic and that the normal principles of Alabama law should apply to such transactions. The Act explicitly provides that a record, signature, or contract "may not be denied legal effect or enforceability solely because [the record or signature] is in electronic format" or solely because "an electronic record was used in [the contract's] formation." § 8-1A-7(a) and (b), Ala. Code 1975. The Legislature expressly provided that, when interpreting the Act, a court must "construe[] and appl[y]" the Act "(1) [t]o facilitate electronic transactions consistent with other applicable law" and "(2) [t]o be consistent with reasonable practices concerning electronic transactions and with the continued expansion of those practices." § 8-1A-6, Ala. Code 1975.

Thus, in light of the Act, our decision not to create a special exception to the duty-to-read rule and our decision not to create a special rule imposing a duty to disclose on a presenter of an electronic contract are consistent with the Legislature's intent that the statutes and common-law rules governing wet-ink contracts also govern the legal effect and enforceability of electronic contracts.

Moreover, our decision is also consistent with the decisions of other

courts that have enforced contracts signed via the DocuSign platform even in the face of fraudulent-inducement claims. See Lojewski v. Group Solar USA, LLC, No. 22 Civ. 10816 (PAE), Aug. 17, 2023 (S.D.N.Y. 2023) (not reported in Federal Supplement) (rejecting the signees' argument that the agreement "signed … on an iPad through the DocuSign website, but in the presence of a representative of the other party to the contract," was unenforceable as fraudulent on the basis that "the Agreement's terms were not explained or shown to them, and … they were not 'given an opportunity to review the documents or permitted to scroll through the documents on the iPad'" because, the court held, the agreement was "akin to a 'clickwrap' agreement, in which 'a user must click "I agree," but not necessarily view the contract to which she is assenting'"); Vital Pharms., Inc. v. Alfieri, No. 20-61307-CIV-SINGHAL/VALLE, July 27, 2022 (S.D. Fla. 2022) (not reported in Federal Supplement) (rejecting the signees' argument that they did not need to comply with the duty-to-read rule to succeed on their fraudulent-inducement claim on the basis that "the DocuSign process would jump over multiple sections to reach a signature line, and the physical documents they were provided did not include the entirety of documents in the DocuSign process," because, the

25

court held, the signees failed to "dispute that they signed the documents and had time to review the documents"); <u>Patterson v. Lear Cap., Inc.</u>, No. 2:20-CV-251-DAK-CMR, Oct. 15, 2020 (D. Utah 2020) (not reported in Federal Supplement) (rejecting the signee's argument that the contract presenter committed fraud by "not allow[ing] him to review any documentation in writing until the payment and fees were received" because, the court held, (1) the signee had failed to allege that the agreement "was not available to read online when he signed the agreement on DocuSign" and (2) "[i]f the contents of the agreement were online for [the signee] to read before signing, there does not appear to be a need to have the agreement in paper form as well").

<u>Conclusion</u>

Based on the foregoing, we reverse the judgment in favor of Santa and Coastal and render a judgment in favor of Brickhouse on Santa and Coastal's fraudulent-inducement claim.

REVERSED AND JUDGMENT RENDERED.

Parker, C.J., and Wise, Sellers, and Stewart, JJ., concur.